IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 13-cv-00943-LTB

HOPE HOMES,

        Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

Plaintiff, Hope Homes, appeals from the Social Security Administration Commissioner's (the "Commissioner") final decision denying her application for Disability Insurance Benefits ("DIB"), filed pursuant to Title II of the Social Security Act (the "SSA"), 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument will not materially aid in resolving this appeal. After considering the parties' arguments and the administrative record, for the reasons below, I affirm the Commissioner's final order.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her September 27, 2010 application for DIB. [Administrative Record ("AR") Doc. # 10-5, 2-9]. Her application was initially denied at the administrative level. [*Id.* at 10-3, 2-3]. An Administrative Law Judge ("ALJ") subsequently conducted a hearing on June 4, 2012 (*id.* at 10-2, 28-53), and issued a written ruling on June 25, 2012 (*id.* at 9-27). The ALJ denied Plaintiff's application on the basis that she was not disabled during the relevant time period because she was capable of performing work in the national economy given her residual functional capacity ("RFC"), age, education,

and work experience. [*Id.* at 22-23]. Plaintiff appealed the denial of her application, and submitted additional evidence to the Social Security Administration Appeals Council ("Appeals Council"). [*Id.* at 8]. On February 11, 2013, the Appeals Council made the new evidence part of the record, but it declined to review the decision of the ALJ, making the denial final for the purpose of judicial review. [*Id.* at 2-7]. In denying review, the Appeals Council informed Plaintiff that it "considered the additional evidence listed on the enclosed Order of Appeals Council[, and it] found that this information does not provide a basis for changing the Administrative Law Judge's decision." [*Id.* at 2-3].

Plaintiff timely filed her Complaint with this Court seeking review of the Commissioner's final decision. [Doc. # 1].

## II.  FACTS

The facts are largely undisputed and extensively provided in the ALJ's order. As such, I provide a limited factual background as relevant here.

Plaintiff was born on January 30, 1971, was 39 years old on her alleged onset date of June 14, 2010, and was 41 at the time of the ALJ's decision. [*Id.* at 10-2, 14-23]. She has a high school equivalent education, is able to communicate in English, and her past relevant work history consists of emissions inspector, cashier, janitor, customer service representative, administrative clerk, and clerk typist. [*Id.* at 22]. Pursuant to 20 C.F.R. § 404.130, in order to be eligible for benefits, Plaintiff must prove that her disability began before the date through which she remained insured, which in this case is December 31, 2014. [*Id.* at 12]. Thus here, the relevant time period for determining disability is June 14, 2010, through June 25, 2012, the date of the ALJ's decision. [*See id.*]; 20 C.F.R. § 404.130.

During the relevant time period Plaintiff earned no income. [*Id.* at 14]. She sought care from the University of Colorado Hospital's family medicine clinic throughout the relevant time period for various complaints related to diabetes, asthma, obesity, depression, anxiety. [*See* AR Doc. # 10-7, 2-63 & 90-121]. However, throughout her visits to the clinic there were no consistent reports of pain throughout her body. [*Id.*] After undergoing tests related to her diabetes in May 2010, Plaintiff followed up with the clinic in June 2010 and reported nausea, pain in her legs and back. [*Id.* at 29]. At this visit Plaintiff also reported that she had not filled her prescriptions for treatment of her diabetes, had failed to check her blood sugar, and had missed a few doses of insulin. [*Id.*] She was encouraged to adhere to her prescribed medication regiment. [*Id.*] In August 2010, Plaintiff returned to the clinic complaining of lightheadedness, dizziness, and nausea. [*Id.* at 20-25]. It was concluded that these were likely the result of a viral infection. [*Id.*] Plaintiff returned to the clinic in October 2010 for a diabetes check-up in which it was noted that Plaintiff's diabetes was not under control and Plaintiff reported failure to adhere to her prescribed medication regiment. [*Id.* at 14-19]. Plaintiff's asthma prescriptions were also renewed at this time. [*Id.*] Plaintiff had several follow up visits to the clinic in June, August and December of 2011, in all of which she was encouraged to take her medication and reported issues with diabetes but which were otherwise relatively normal. [*Id.*]

On December 29, 2010, Plaintiff underwent a physical consultative examination by Michael Finch, M.D. [*Id.* at 64-68]. Dr. Finch reported that Plaintiff was an obese individual who reported pain in the posterior neck and back at a level of 6 out of 10, had a normal range of motion in her thoracic spine, a mildly reduced range of motion in her lumbar spine, and a normal range of motion in her knees. [*Id.* at 66]. His report also indicated that she had an antalgic gait,

3

had some diminished strength in her elbows, shoulders, and hips, but had normal grip strength. [*Id.*] Dr. Finch noted that Plaintiff's pain behavior was consistent with his findings. [*Id.*] Based on his examination, Dr. Finch affirmed her diabetes diagnosis and concluded that Plaintiff could lift and carry 10 pounds frequently or occasionally without the use of any assistive devices. [*Id.* at 68]. He also reported that he could not assess Plaintiff's sitting, standing, or walking limitations based on his assessment and recommended that Plaintiff undergo psychiatric and orthopedic evaluations. [*Id.*]

Plaintiff underwent a psychological evaluation by Vanessa Rollins, Ph.D. on January 3, 2011. [*Id.* at 76-80]. Dr. Rollins noted that although Plaintiff's mental health medical records were not available for review, Plaintiff complained of "depression, pain and diabetes." [*Id.* at 76]. Dr. Rollins noted that Plaintiff was tearful throughout the exam and her psychomotor activity appeared decreased including a decreased rate and volume of speech. [*Id.* at 78]. Plaintiff's mood appeared "moderately depressed" with a mildly impaired memory, average intellectual functioning, and an overall demeanor that appeared very guarded. [*Id.*] As a result, Dr. Rollins diagnosed Plaintiff with depression and generalized anxiety. [*Id.* at 79]. She noted that Plaintiff is not currently receiving treatment, is ambivalent about treatment, and her "current level of depression and anxiety is likely to make concentration, persistence, pace, and understanding difficult for her on the job." [*Id.*] Accordingly, Dr. Rollins assessed Plaintiff to have a Global Assessment of Functioning ("GAF") score of 65.

### III. LAW

To qualify for DIB under sections 216(i) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB for a

period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§ 416(i), 423. A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity. If she is, DIB is denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for DIB. *See* 20 C.F.R. § 404.1520(c). Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed Residual Functional Capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §

404.1520(g).

As relevant here, a claimant is required to establish that she became disabled prior to the expiration of her insured status. 20 C.F.R. § 404.130; *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1347-48 (10th Cir. 1990).

### IV. ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through December 31, 2014. [AR Doc. # 10-2, 14]. He ruled that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 14, 2010, through the date of his decision, June 25, 2012. [*Id.*] The ALJ found that through the date last insured, the Plaintiff had the following sufficiently severe impairments: diabetes, obesity, depression, and anxiety (Step Two). [*Id.*] However, the ALJ then determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [*Id*. at 15-16]. Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equals a listed impairment, he then assessed Plaintiff's RFC. [*Id*. at 16-22].

The ALJ evaluated the evidence and found that through the date last insured, Plaintiff had the RFC to perform work "light work as defined in 20 C.F.R. § 404.1567(b)." [*Id.*] The ALJ further provided that Plaintiff "can sit, stand, and walk for six hours each in an eight-hour workday, with normal breaks[,] can lift and/or carry 20 pounds occasionally and 10 pounds frequently[,] is limited to simple, routine, repetitive tasks[, and] can have occasional public contact." [*Id.*] As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was not able to perform any past relevant work (Step 4). [*Id.* at 22]. Because the ALJ concluded at Step

6

Four that Plaintiff was unable to perform past relevant work, the ALJ continued to Step Five, and under that Step concluded that there were other jobs existing in the national economy that Plaintiff was able to perform. [*Id*. at 22-23]. Consequently, the ALJ concluded that Plaintiff was not disabled between her alleged onset date and the date last insured. [*Id.* at 23].

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied." *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003).  My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted).  It requires "more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

## VI.  APPEAL

Plaintiff challenges the ALJ's determinations on three grounds.  First, Plaintiff contends that the ALJ erred in his RFC analysis.  Second, Plaintiff contends that the ALJ's Step Four evaluations of consultative physician Dr. Michael Finch, consultative psychologist Dr. Vanessa Rollins, and a state agency physical consultant were improper.  Third, Plaintiff contends that the ALJ erred in his Step Five determination that Plaintiff could perform other jobs existing in the

7

national economy. I address each of Plaintiff's arguments in turn below.

**A.     ALJ's RFC Assessment**

Plaintiff first challenges the ALJ's assessed RFC. Specifically, Plaintiff contends that the ALJ's conclusion that Plaintiff "can sit, stand, or walk for 6 hours in an 8 hour workday," and that the ALJ's mental restrictions "limit[ing Plaintiff] to simple, routine, repetitive tasks [with] occasional public contact," are not supported by any medical record and ignores evidence to the contrary. [*See* Doc. # 13, 15-18]. I disagree.

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.* Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs, laboratory findings, and medical source statements. Soc. Sec. Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). SSR 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

Generally, "an RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . Only after that may RFC be expressed in terms of the exertional levels of work" such as "light." *Ren v. Astrue*, 2009 WL 3497785, *5 (D. Colo., Oct. 29, 2009) (unpublished) (*citing* SSR 96-8p, 1996 WL 374184, *1). This function-by-function assessment "requires the ALJ to address 'an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.'" *Id.* (*quoting* SSR 96-8p, 1996 WL 374184, *5). Additionally "'[e]ach function must be considered separately . . . even if the final RFC assessment will combine activities.'" *Id.* (*quoting* SSR 96-8p, 1996 WL 374184, at *5).

Here, the ALJ determined that Plaintiff has the RFC to perform "light work," as defined by 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations, Plaintiff: can sit, stand and walk for six hours each in an eight-hour workday with normal breaks; can lift and/or carry 20 pounds occasionally and 10 pounds frequently; is limited to simple, routine, repetitive tasks; and can have occasional public contact. [AR Doc. # 10-2, 16]. Thus, the ALJ stated that Plaintiff could perform "light work" with additional, articulated restrictions addressing the standing, sitting, and walking demands. The Act defines "light work" as work that:

> Involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). The definition of "light work," combined with the additional specific limitations the ALJ articulated, makes it clear that the ALJ expressed a finding as to Plaintiff's

ability to walk, her standing and sitting limitations, and mental limitations. The ALJ expressly provided that Plaintiff sit, stand, and walk for six hours each in an eight-hour work day, with normal breaks, was limited to simple, routine, repetitive tasks, and could have occasional public contact. Stated differently, the ALJ did not express Plaintiff's entire RFC solely in terms of the exertional level of work, which is what SSR 96-8p instructs against. The ALJ instead expressed Plaintiff's abilities by saying she could perform "light work" with additional, articulated reasons that accounted for Plaintiff's relevant medical and mental limitations. He therefore comported with SSR 96-8p.

Furthermore, SSR 96-8p specifically notes that the function-by-function analysis is most relevant when an ALJ determines whether a claimant is able to perform past work at Step Four. *See* SSR 96-8p, 1996 WL 374184, at *5. Because the ALJ here found that the Plaintiff was unable to do past relevant work, "the function-by-function analysis is less critical." *Ren*, 2009 WL 3497785, at *6 (*quoting* SSR 96-8p, 1996 WL 374184, at *5). Additionally, the ALJ's subsequent analysis discussed in detail the medical evidence relating to Plaintiff's ability to perform the seven strength demands and her mental limitations. "This is adequate to meet the requirements of 96-8p." *Id.*; *see also Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993) (holding that any error in failing to include an explicit statement of a specific restriction when there is a complete RFC analysis is merely a technical error "minor enough not to undermine confidence in the determination of th[e] case."); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that any such potential error is therefore harmless).

For these reasons I reject Plaintiff's argument and hold that the ALJ did not err in assessing Plaintiff's RFC. Furthermore, substantial evidence in the record as a whole supports

the ALJ's determinations.

**B.    ALJ's Step Four Analysis**

Plaintiff challenges the ALJ's Step Four evaluations of consultative physician Dr. Michael Finch, consultative psychologist Dr. Vanessa Rollins, and a state agency physical consultant. She contends that the weight he assigned each was improper. I disagree.

As is applicable here, unless the opinion of a treating source is given controlling weight, an ALJ must explain the weight given to the opinion of a reviewing physician. 20 C.F.R. § 404.1527(e)(2)(ii). In evaluating a reviewing physician's opinion, an ALJ must review them based on the factors listed in 20 C.F.R. § 404.1527(a) to (d), "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations [the physicians] provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 404.1527(e)(2)(ii). It is the ALJ's duty to give consideration to all the medical opinions in the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). He must also discuss the weight he assigns to such opinions. *See id.* §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

Plaintiff cites three opinions that allegedly were not weighed: two consulting-examiner reports and a state agency consultation report. But with one minor exceptions, which I will discuss, she does not identify any inconsistencies either among these medical opinions or

between the opinions and the ALJ's RFC. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.")

### 1.     Dr. Finch

The first opinion that Plaintiff complains was not properly weighed is a physical consultative examination report prepared by Dr. Michael Finch. As the ALJ correctly noted, Dr. Finch's report itself expresses few conclusions about Plaintiff's physical capacities. Dr. Finch only opined that Plaintiff could lift and carry 10 pounds frequently or occasionally, and specifically provided that he could not further assess Plaintiff's limitations. [AR Doc. # 10-2, 20]. Otherwise, Dr. Finch's report only discussed Plaintiff's alleged limitations without any correlating restrictions. [*Id*.] The ALJ discussed this record and expressly found that "Dr Finch's minimal opinion is given minimal weight." [*Id.*] Dr. Finch's limited findings are generally consistent with the ALJ's express RFC. There is no reason to believe that any further analysis or weighing of this opinion could advance Plaintiff's claim of disability, and as such any alleged error would be harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

### 2.     Dr. Rollins

Plaintiff also complains that consulting psychologist Dr. Vanessa Rollins' psychological evaluation was not properly weighed. Dr. Rollins diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and panic disorder. [AR Doc. # 10-7, 76-81]. As a result, she assessed that Plaintiff had a GAF score of 65. [*Id.*] A GAF score of 65 indicates an

individual with some difficulty in social, occupational, or school functioning but who generally functions pretty well and has some meaningful interpersonal relationships. [*See* AR Doc. # 10-2, 21]. The ALJ discussed Dr. Rollins' report at length and noted that although it was "vague and [did] not provide the extent of [Plaintiff's limitations,] he assigned it significant weight." [*Id.*] He also noted that a state agency mental consultant opined that Plaintiff did not have any severe mental impairments and had only mild limitations in all areas of mental functioning, an opinion inconsistent with Dr. Rollins' opinion. [*Id.*] However the ALJ opted to follow Dr. Rollins' opinion and give Plaintiff the "maximum reasonable benefit of the doubt." [*Id.* at 22]. Accordingly, the ALJ found that Dr. Rollins' [opinion, in conjunction with her GAF finding and the claimant's objective findings . . . is fully account[ed] for in this decision and uncontested by any other examining psychologist." [*Id.*] I find that this is sufficient and that Dr. Rollins' opinions are adequately accounted for in the ALJ's assessed RFC.

### 3. State Agency Physical Consultant Report

Lastly, Plaintiff contends that the ALJ did not properly weigh the opinion of a state agency consultant who found that Plaintiff could stand and/or walk for a total of four hours in an eight-hour day with normal breaks. [*See* Doc. # 13, 16]. In discussing this opinion, the ALJ provided that this opinion was entitled to no weight because it was "rendered by a single-decision maker [and] is [] overly restrictive as it accounts for non-severe impairments." [AR Doc. 10-2, 21]. This is a sufficient reason to give no weight to the state agency's opinion. *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (*citing Turner v. Heckler*, 754 F.2d 326, 329 (10th Cir. 1985)) (explaining that a consultative physician's evaluation form is "not substantial

evidence" and because their findings are "based upon limited contact and examination [they] are of suspect reliability.")

Thus, the ALJ's determinations at Step Four were proper.

**C.     ALJ's Step Five Analysis**

Lastly, Plaintiff contends that the ALJ erred in his Step Five determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [*See* Doc. # 13, 18-19]. I disagree.

At Step Five of the sequential evaluation procedure the ALJ must decide whether the claimant can perform any other gainful and substantial work that exists in the national economy. 20 C.F.R. § 404.1520(g).  The Commissioner has the burden at Step Five of showing that the claimant is capable of performing such work.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). This determination is made on the basis of the claimant's age, education, work experience, and RFC.  20 C.F.R. § 404.1520(g)(1); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Courts have declined to set a rule as to what constitutes a "significant number" of jobs in the national economy for purposes of the Act.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Instead, the ALJ should make the decision based on the individual merits of the case and common sense.  *Id.*

Plaintiff argues that the ALJ erred in Step Five of the disability analysis by finding that there were a significant number of jobs available for Plaintiff, and that she was therefore not disabled within the meaning of the Act.  Plaintiff argues that the ALJ failed to consider all of her

limitations in determining that Plaintiff could perform the jobs of: cleaner (DOT 323.687-014); packer (DOT 920.685-026); and inspector (DOT 727.687-054). Specifically, Plaintiff contends that the evidence indicates that Plaintiff is limited to only occasional stooping and has intermittent problems with blurry vision and that these three positions require more than these restrictions permit. [Doc. # 13, 18-19]. However, nothing in the record indicates that Plaintiff is incapable of occasional stooping nor that she had any visual limitations that would preclude her from completing the work. The ALJ discussed Plaintiff's few and inconsistent complaints of burry vision in his determination that Plaintiff's complaints were not credible and Plaintiff's testimony was not reliable. Plaintiff does not dispute this determination, and as such, it will not be further discussed except to note that the ALJ did provide that while Plaintiff did "get vision checks, there is little evidence of a non-correctable impairment and no diagnosis of retinopathy." [AR Doc. # 10-2, 18].

Further, I find that the ALJ properly relied on the testimony of the Vocational Expert ("VE") in making the determination that Plaintiff could perform these jobs, which is properly based on the VE's professional experience. *Rogers v. Astrue*, 2009 WL 368386 at *4 (10th Cir., Feb.17, 2009). The VE testified that Plaintiff could perform these jobs given the ALJ's RFC findings. Plaintiff does not point to any actual evidence indicating the contrary. In the absence of any evidence that these jobs require activity that Plaintiff cannot perform or that is prohibited by the ALJ's RFC, I find no error in the ALJ's reliance on the VE's testimony that Plaintiff can perform the jobs identified. *Hackett*, 395 F.3d at 1173 (the court will not reweigh the evidence or substitute its judgment for that of the Commissioner); *White*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001) (same). Accordingly, remand is not warranted on this issue.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: June   18  , 2014, in Denver, Colorado.

                                        BY THE COURT

                                          s/Lewis T. Babcock

                                        LEWIS T. BABCOCK, JUDGE